The last item on our calendar is Drew Duscher v. Sea Port Group Securities. Thank you. Good morning, Counsel. Good morning, Your Honor. Michael Bowie from Kasowitz Benson Torres on behalf of Mr. Duscher. Your Honor, I'll be arguing that the District Court erred in not vacating the arbitration award, or at a minimum, at least reviewing the documents that were at issue before it denied the motion to vacate. You know we have very high standards in order to overturn an arbitral award. You're aware of that. Absolutely, Your Honor. In this case, the two standards under the federal statute are met here, and that is that under Chevron, the record substantiated, in fact, was not really contradicted, that the panel failed to provide Mr. Duscher with full and timely access to one category of undisputably central documents. Did he ask them to subpoena those records? Did he try to subpoena them? He did, Your Honor. That's why when I reread the briefs, this mem, if you will, gets completely distorted. This issue, there were three separate motions to compel that included these documents, including at some point specific references to these documents. Each one of those motions were granted. The documents then weren't produced, but representations were made by Sobel, I mean, I'm sorry, by respondents, that they had produced whatever documents Sobel had. And they said, but why don't they go subpoena them if they want to? But of course, there was no right to subpoena those documents in pretrial discovery in the arbitration, although there was a right to subpoena them to the hearing. But every application that Duscher had made for a third-party subpoena had been denied. So the panel said, no, we're going to order the respondent to produce those documents. The respondent then said, we have basically produced whatever we gave Sobel. They then get to the hearing, and they go for nine days. And on the last day of testimony, when Seaport's accountant is on the stand, it becomes apparent that the documents that Sobel has are not documents that have necessarily been produced. At that point, did you ask for a subpoena? Yes, Your Honor. If you look, there's a long and somewhat meandering colloquy that goes back and forth. But if you look at that very carefully, it is, I believe, Your Honor, this morning, I look at one particular, there's probably 15, 20 pages. I think one of them says 1754, but we will get that. But at the very end of that day, where they come out is counsel asks that the- Counsel for Duscher? Counsel for Duscher asks for sanctions, that these documents have not been produced, that they've been a misrepresentation. He essentially asks that they strike the defense and preclude them from challenging that he had a 20% equity stake. The other side comes forward and says, they argue the merits of that and say, well, we don't have an objection if they go ahead and issue a subpoena now to bring these documents to the hearing. There's then further back and forth about the panel deliberates and comes back and says, we're going to order that they produce the QuickBooks, which it turned out were documents Seaport had and had not produced, the electronic files. And I can talk about why the native original documents were the necessary documents, Your Honor, if you need to, but the QuickBooks. But then, which Duscher's counsel said, that's good, we need that, we should have had that, but I also need the stuff from Sobel. Where that ended up was back and forth about whether they should bifurcate, not bifurcate, reopen the hearing, and put it off for a month to do discovery. The last day of the hearing. And what counsel for Duscher came back and said was, why don't you deliberate and decide whether you're going to grant my motion for sanctions, in which case I win. Presumably, maybe I just win regardless on the merits, because I might. But otherwise, I'm requesting that you reopen the hearing, allow me to subpoena the documents, and then present that evidence. The panel said, okay, let's proceed that way, they did closings. And then the panel simply came out with a ruling that didn't issue any sanction, didn't reopen the hearing, and didn't provide for a subpoena. Even though, when you read that portion of the transcript, the panel itself says, the chair says, these documents go directly to the core of Mr. Duscher's claim. And so we believe the panel failed in its obligation under Chevron, this court's decision in Chevron, to ensure that Duscher had full and timely access to those documents. And when you look at the district court's rejection of that argument, the court looks at the statute and says, well, Duscher can't say that the panel refused to adjourn the hearing, so he could present this evidence, because in connection with one of the original motions to compel, it gave an adjournment. Okay, that part's true, but it's apples and oranges. Because the panel absolutely, without a doubt, refused to adjourn the hearing at the end, upon a specific request to do so, when it became clear that these documents had not been produced and should be subpoenaed. So the court was just wrong on that. It's just factually wrong. It's apples and oranges. The assertion, there is support for the assertion. It's just support for an assertion about a different thing. The panel did improperly refuse to adjourn upon a request to get that evidence. The court then says, well, they didn't exclude any, they didn't refuse to hear any evidence, because look at all the evidence he got to produce. Again, Your Honors, it's sort of apples and oranges. The question isn't whether we got to produce some evidence. The question was, once this evidence that the panel itself decided went directly to the core of his claims existed, and it didn't give us full and timely access for that, then it violated the statute. The last thing the court says, well, they have lots of discretion to control discovery. That's true. But here they had ordered these documents produced three times. They allude to the fact that they weren't produced in the final order, in their final award? No. No, Your Honor. They don't. It's an unreasoned award. And so there's no saying, there's no holding there that for discovery purposes we decline. And, Your Honor, I submit that if that were the case, that would be unreasonable, because it couldn't be that they determined at the end, clearly these go directly to this man's claims. And, of course, Your Honor, they were the original documents. That was an issue. We needed the original best evidence, because there were issues about whether the documents that had been produced in hard copy had been altered or were they after the fact. These were contemporaneous documents. They were the best evidence. And so it would have been unreasonable for them to say, you're not entitled to that. With respect to prejudice, so I believe, Your Honor, there the panel did engage in, quote, unquote, misconduct under the statute by failing to provide full and timely access as Chevron requires. The next question then is, was there prejudice? The record before the district court . . . Sorry. I want to go back to your prior sentence. It doesn't seem to me self-evident. I mean, you make a strong argument that you didn't get something that was important that you should have gotten. But what about the concept of misconduct? Is that misconduct by the arbitrator as opposed to what we might say in court litigation was an erroneous ruling or something beyond the court's appropriate discretion? Your Honor, I had the same question when I read the statute, because you're first blessed about what is misconduct. You think it's something intentional. And the cases we cite . . . It doesn't have to be intentional, but misconduct is something different from just an erroneous ruling. Correct, Your Honor. But one of the things that the Chevron case makes clear is that one of the things that the panel has an obligation to do is provide full and timely access to core documents. And the Chevron case is a great example, right, because it's similar in this case in that it was sort of sprawling. The arguments were sprawling. There was lots of evidence. Second Circuit made the point that many of the arguments that were brought up on the challenge seemed to sort of be complaints about things that happened just as the way the cookie crumbles in litigation. But then they said, but there's this one category of documents, these shipping logs, these port logs. This is a maritime case. And they said, these are sort of the most important documents in a case like this, and they weren't produced until after the hearing. And counsel only had a week or so to consider them before they submitted something, and they didn't have them during the hearing. And we, therefore, say the panel engaged in misconduct such that, not intentional misconduct, but engaged in misconduct that did not secure full and timely access to the documents. So, Your Honor, if I could wrap up on the second piece. I'm a little bit over. So the second piece, prejudice. The record before the district court there was entirely one-sided. The panel had said on the last day of evidence that these documents went directly to the core issue. There was an affidavit from the trial attorney who actually has looked at these documents, which were handicapped, are they subject to a protective order, so I can't describe them, I can't use them unless they are somehow compelled or produced in the district court case. But that lawyer reviewed them and put in an affidavit saying that these were game changers. These were a smoking gun. Third, Judge, common sense. We could have avoided much of the back and forth below in district court, and we could have taken a mystery out of this appeal if, when we challenged this, Seaport simply said, you know what, we have no problem with this. Judge, here are the documents. Let's look at the documents and see if they actually say anything that would have mattered. The fact that they continued to resist that, they're their documents. I think you should infer there's a reasonable basis to believe that, in fact, Mr. Morolla, the trial attorney for Dasher, is correct in saying these were material documents. What did the district court find? How did he find there was no prejudice? One, he didn't look at the documents. It's impossible, Your Honors, for a court to say, I didn't look at the documents, but I know they couldn't have been material and the lack of them couldn't have been prejudicial. The only other basis he gave was that Dasher had other evidence of loss of profit and losses. The problem with that, Your Honor, is this issue wasn't about profit and losses. This issue was about whether he had a capital account and equity. And so that really is just a non sequitur. Thank you. You obtain three minutes for rebuttal. We'll hear from Appellee. Good morning. Good morning. Counsel, why haven't you turned over these documents? The documents that the appellant is requesting are not documents from the party that is in this case. They are documents that are held by a non-party accounting firm. And this was an issue that was extensively litigated before the arbitral panel as appellant's argument confirmed and as Judge Furman's well-reasoned decision denying vacature of the arbitration decision in this case also confirms. What happened in this case, Your Honor, is that this was a robust arbitration. It went on for almost or more than a year, nine-day hearing. The issue of these documents, which are, again, documents held by a non-party. Do you have access to these documents? So let me tell the Court what happened with respect to these documents. When the question about these documents came up in the arbitration, the CPORT provided, so it's an appellant, an accounting firm, the Sobel firm, whose name appears throughout the papers. When Mr. Dasher first raised the question of wanting to obtain documents from Sobel, he went to Sobel and Sobel said, we will turn these documents over in response to a subpoena. The law firm who engaged Sobel, who was not before the Court on this appeal, also referenced non-party discovery in the arbitration process. CPORT wrote to Sobel and to counsel for appellant and suggested that the appellant obtain these documents through the FINRA rules that provide for non-party discovery. And you can find those citations in the record at A135, A134, and A137. When the question of motion to compel briefing was then made before the arbitral panel, and to be clear here, Your Honors, this was a litigated arbitration. There were motions to compel made by both sides. As Judge Furman notes in his decision, the arbitration panel carefully considered those motions that were made. It granted some requests. It denied other requests. In response to this specific issue, CPORT did exactly what any litigant should do with respect to documents that had been provided to this non-party, documents that it kept a copy of that had been shared with the non-party, where it had it in its possession. Give their copy? It provided a copy of those documents. Yes, it did, Your Honor. But not the originals? With respect to the originals, the issue is, Your Honor, is there was a thumb drive. Mr. Dasher's outside accountants went to CPORT's outside accountants and took a bunch of documents with them when they left on an electronic thumb drive or flash drive. And what CPORT said many, many months before the arbitration hearing is, we do not have a copy of that thumb drive. The only party who has a copy of that thumb drive is the non-party Sobel, and that non-party should be subpoenaed. As Judge Furman noted, for some reason that has never been explained to the arbitration panel, to Your Honors or Judge Furman, Mr. Dasher made a strategic decision not to seek those documents in connection with the arbitration. That's not what I heard from opposing counsel. I understand it's not . . . He alleges that they tried to get it all wrong. So I would note that I would refer the Court to the record in the case and to Judge Furman's citations in the case, which make clear that Mr. Dasher sought non-party subpoenas of other parties in the arbitration on three different instances. And you can find the arbitration panel's order with respect to those requests, which again, this is the appellant requesting a subpoena of non-parties in the arbitration, but not requesting a subpoena of the non-party who he had been told had the documents that he felt was important. He did not do so. Then, during the arbitration hearing, there are two ways to get evidence, as everybody knows. You can get evidence through testimony. You can get evidence through documents. Mr. Dasher told our clients, and also told the arbitration panel, that he intended to subpoena witnesses, to call witnesses from the Sobel firm, this non-party, to talk about, presumably, these documents. He provided a witness list to the panel. And if you look at CA-349, you will see the names of Sobel witnesses that were listed. During the hearing, Mr. Dasher made no attempt to produce those witnesses, nor to subpoena those witnesses. What is your theory about why he did not do that? I think it was a strategic decision that was . . . What would be the strategic benefit of not getting evidence that he thought was crucial to his case? Perhaps, Your Honor, the documents do not show what he is arguing they show. And there is more to be made of making an argument about them not being present than actually presenting the documents to the trier of fact. And I say that, Your Honor, because there was a lot of other evidence in the arbitration record that showed the contrary of what Mr. Dasher said these documents would reflect. Mr. Dasher argued that he had some . . . he was a former employee of Seaport, Your Honor, and he argued that he somehow had an equity stake in Seaport. And he said that these documents, held by a non-party, which were some of Seaport's accounting records, would show this. This was a heavily litigated issue in the arbitration. And I would refer the Court to Peli's papers, the citations in the record, at pages 14 through 16 of our opposition, where we go through in detail all of the different types of evidence that were in the record showing that Mr. Dasher did not hold an equity stake in Seaport, including his own sworn testimony from prior proceedings. So to answer the Court's question, I don't know why litigants make decisions. I don't know whether this was a good decision or not. What Judge Furman said is that what he saw in this case, and what this Court is now seeing, is an example of litigator's remorse. A strategic decision that is made in the context of an arbitration that does not obtain the desired results. Is it your view, and I will certainly ask opposing counsel, that had they made a request for subpoena at the appropriate time, these documents would have been provided? The Court, please repeat its question. Yes. If Mr. Dasher had made a request for these documents at the appropriate time before the arbitral panel, they would have been provided? I believe, based on the arbitration record, the arbitrators during the hearing explicitly gave Mr. Dasher the option to obtain a subpoena for these documents. And the Sobel firm had previously communicated that if it received a lawful subpoena, it would turn over the documents. So, in this instance, Your Honor, I think that there was reason to believe it. And I would encourage the panel to look at what the arbitral panel said to Mr. Dasher in the argument during the last day of the hearing, when this issue came up after all of this litigation. Because the words that were used by his counsel, he was also present, are very important. The arbitral panel gave Mr. Dasher the opportunity to not proceed to closing the record, to not proceeding to closing arguments, so he could get these documents. He requested a break to confer between lawyer and client to make a decision on how he wanted to proceed. He then returned, and as part of that questioning, the panel asked him to consider how important this possible information that he may get would be to his client's claim. That's at CA801. After a break, Mr. Dasher and his counsel returned. Counsel thanked the panel and told the panel that it had discretion to take this question under advisement. He could have returned and said, yes, thank you, panel of three FINRA arbitrators, I would like you to issue a subpoena to the Sobel firm. He did not do so. He told the panel it had discretion. You believe they would have? I believe they would have. And I believe, beyond what I believe, Your Honor, the record supports that they would have if you look at the arbitration transcript. He also told the panel that it was within their powers to consider closing arguments and to consider his request both for sanctions and for a non-party subpoena as part of issuing its final decision, which is exactly what the arbitration panel did. And he told the panel, and this is at CA806, that if the panel thought that respondents' actions didn't warrant any ramifications, they could so rule in their final decision. The other thing he told the panel, which has not come up, but Judge Furman emphasizes, and I did not hear an argument, is that after all of this discussion and all of this litigation, the chairperson of the panel told the parties that she wanted to make sure that they had done their job as an arbitration panel. And I'm looking at the record at 864-865. She told the parties, I would like you to state for the record whether or not you feel that you have had a full and fair opportunity to be heard, both you and your client. Counsel for appellant, with appellant sitting next to him, responded, I do, we do, yes, we thank you, as did appellee. Judge Furman appropriately focused on this language in a case that is before him under the Federal Arbitration Act, where the standard is for overturning under 10A3, denial of fundamental fairness. When you have a party on the record stating that he had had a full and fair opportunity to be heard. Judge Furman said that this was a concession from behind the proverbial veil of ignorance, which speaks volumes. It says that the process was fair, which is what the issue that is before the court under 10A3, Judge Furman, was about. What then happened, as counsel explained, is the arbitration panel issued its decision and appellant is unhappy with a portion of that decision. He thinks he should have gotten more money for his claimed equity stake. After he got that decision, he decided the panel had done something wrong. That is litigator's remorse. That is the opposite of what the Federal Arbitration Act allows a litigant to do. And I see I'm out of time, but one final point with respect to the Chevron case is I believe in the Chevron case that was mentioned by counsel that vacature was actually denied and went the way of appellees and not appellant. So unless the court has any other questions. Thank you very much. Counsel. Your Honor, the Chevron case, vacator was denied and remanded so that the record could be more fulsome in that the lawyer for the appellant there, who said he didn't get the documents, the Second Circuit said he should have gotten these documents, he didn't very well articulate exactly how it was they prejudiced him, so they sent it back to him. That was counsel's argument, that you had many opportunities, including at the very end, to seek these very documents and you declined to do so. Absolutely, Judge. It's just categorically false. That's why I started with that, Your Honor. It's in the briefs. It's like a memo. It's just a suggestion. But when you go through there, it's not true. The only time the panel ever, quote, unquote, offered a subpoena was at the very end. But they offered it then, right? They offered it along with a continuance. But then they said, do we really want a continuance? Why don't you think about it? We're not sure this is the best . . . He could have said, yes, we want a subpoena and a continuance. And he did. And if you look at pages, look at the entire colloquy, Judge. 754 to 762, 768 to 770, 805 to 808, he did ask for it. And that is the only place you can begin and end there. Because that is the only time it became clear, on that day, it became clear to Mr. Morolla, Dosher's counsel, and to the panel, that contrary to the representations they had made, there was this category of documents that the chair, on that day said, go directly to his claim. There was lots of colloquy about how to deal with a remedy. There could have been a subpoena and a continuance. There could have been a sanction. At the end of the day, what Mr. Morolla said is, why doesn't the panel deliberate? I want you to strike their defenses. If you don't strike their defenses, I want a subpoena issued and a continuance. And then it's correct. Then he said, thank you. You've all been very fair to me. But then they ignored that relief. So that's, again, apples and oranges, Your Honor. He asked for exactly this relief. The panel offered it. He said, thank you. I'll take that. And they didn't give it to him. And it goes directly to his access to materials that the panel itself, at that moment, said was highly irrelevant. You asked the questions right up front, Your Honor. I want to hit them. You said, why haven't you produced these documents? Counsel said, these are not documents of a party to this proceeding. That's categorically false, Your Honor, categorically false. Wasn't Sobel not a party? Sobel was their accountant. So they gave Sobel this information as part of due diligence for Dasher and another person, Myers' partnership interest. So Sobel was the defendant, respondent, Mr. Myers' accountant. Mr. Myers and Seaport gave them this information as an accountant. It wasn't Sobel's information. It doesn't reflect anything about Sobel. But Sobel was the custodian. He was, but just like a lawyer is a custodian, all Seaport had to do, the reason Sobel wanted a subpoena was because Sobel got the information from his client, Seaport. So Sobel said, well, Seaport isn't giving me permission to give you this, so you'll have to subpoena me. It's a completely misleading canard. Are you suggesting that Seaport at any time could have given this document as well? Of course they could have, Judge, and they said they did. And the panel, when you're asked, they ask, why didn't you subpoena? Why didn't you subpoena? Because these documents, there are motions, three motions to compel that called for these documents. Each one was granted. And so there was no reason to subpoena Sobel, especially after they said that whatever Sobel had, we gave you, which is what you would expect, right? Because all Sobel did was come over and get some documents from there. But it turned out that wasn't the case. And with respect to the other parties, the third parties, did they try to subpoena, Judge? All of those subpoenas were denied by the panel. Are you clear on the last, at the very end of the hearing, that that wasn't the case? I mean, the very end of the arbitration? Yes. And in the pages that I cited, you'll see Mr. Merola explains it. He says it was because a Mr. Povel, who was the accountant, the accounting firm who audited their books, was testifying. And on cross-examination, he explained that essentially what had happened was, when Sobel came in in 2012, that was before the dispute actually started. So no dispute, no reason to dissemble, no reason to cover anything up. It got a snapshot, an electronic, original form of the Quicken books and other accounting records. And it had them. After the dispute and in the arbitration, they never produced those documents. So they said they had. What they had produced are hard copies of subsequent accounting records, which, of course, don't allow you to look to see whether they were changed or whether those accounting records that happened after the dispute occurred are consistent with what the facts were before the dispute occurred. And once it became clear during that testimony that those documents that Sobel had were different, Mr. Merola stood up just before... And he made a major stink over it. And he did demand that, if you are not going to strike their defences, that I get the subpoena and I get to get these documents. He did demand that. And, again, the evidence of prejudice is undisputed here. It's undisputed. The panel itself on that day said these were directly relevant to his core claim. Mr. Merola has put in a declaration, he's an officer of the court, saying, I have reviewed these documents, I can't tell you what's in them, but they are a game-changer. They are a smoking gun. The fact that they have not produced them, they could have just come to Judge Furman and said, look, this is all hogwash, here's what the documents are. She made these arguments to you, Judge. She said, well, these documents are just like lots of other documents that came in. I don't know, everyone has their own litigation strategy, but if I looked at these documents and I knew that was the case, I wouldn't fight over producing them. I'd say, here they are, nothing to see here, let's move on. The fact that they haven't and they're still defending that position should be a red flag to this court. And it certainly provides credibility to Mr. Merola that these were, in fact, highly relevant documents. And, Your Honor, I'll end with this. Obviously, arbitrations are supposed to be expedited, but, however, they are supposed to be fair. And the most fundamental fairness we have in our system is that you don't hide the ball in discovery, that you produce what needs to be produced so the parties can get to the merits. And what the record here shows is a ridiculous hiding of the ball. When they say, what Seaport told us was that we should, Sobel will turn it over to a subpoena. That's like me giving it to my lawyer and saying, I don't have it anymore, but you can subpoena my lawyer, and I'll say, that's okay. Disingenuous, that's hiding the ball. So, Your Honor, I think there is nothing you heard in opposition to this appeal right now that contradicts two undisputed facts. They did not have timely access and full access before the hearing closed to these documents, as Chevron required. And unlike Chevron, the prejudice here is clear. It's clear from the panel. It's clear from Mr. Merola. It's clear from the fact they're still hiding these documents. And the district court, most importantly, the district court's finding of no prejudice is based on a failure to review these documents. So I don't know how you can say without looking at a document, it wouldn't have made a difference to a good trial lawyer. And two, to say, well, he had documents about losses and profits, which has nothing to do with this issue, and I just think the district court misunderstood that. So for all those reasons, Your Honor, we think the award should be vacated. At a minimum, it should be remanded so that the district court is required to review these documents and hear the arguments on that basis. Thank you. Well, reserved decision. Very nice argument. The last case on our calendar is on submission, so I'll ask the clerk to adjourn court. Court is adjourned.